THE STATE OF NEBRASKA, EX REL. THE GLOBE PUBLISHING CO., v. THE BOARD OF COUNTY COMMISSIONERS OF SALINE COUNTY.

1. **County: STATIONERY SUPPLIES.** In procuring the supplies for a county mentioned in section 149, chapter 18 of the Compiled Statutes, where the cost exceeds $200, it is the duty of the county board after due notice to let the contract to the lowest bidder that can give adequate security for the performance of the agreement, and there is no authority to let such contracts in any other way.

2. ———: ———. The county board may reject all bids for such supplies; but upon doing so it is its duty to again advertise for the furnishing of supplies.

3. ———: ———. In the absence of fraud, where the board rejects all bids, the lowest bidder cannot compel the awarding of the contract to himself.

4. ———: ———. A tax payer in a proper case may compel the county board to take the necessary steps to let the contract for supplies to the lowest bidder.

ORIGINAL application for mandamus.

*Abbott & Abbott* and *Dawes, Foss & Stephens,* for relator.

*Hastings & McGintie,* for respondent.

MAXWELL, CH. J.

This is an application for a mandamus to compel the defendants to award the contract for the supplies for Saline county for the year 1886 to the relator.

It is alleged in the petition that the plaintiff is a corporation duly organized under the laws of this state; that on the 3d day of December, 1885, the county clerk of Saline county published in the *Opposition,* a newspaper published at Wilber, in said county, estimates of the probable number of each item of books, blanks, and stationery required by said county for the use of its various officers for the year 1886, and invited sealed proposals for furnishing the same; that the cost of furnishing books, blanks, and stationery for the officers of said county greatly exceeds the sum of $200 per year; that on the 31st of December, 1885, the relator filed a bid in writing with the county clerk of said county "in and by which the plaintiff offered and proposed to furnish all the items so advertised for, and did state the several items thereof, and the quality of each, and the price of each gross item thereof;" that "said bid was the lowest bid and in response to said advertisement, and that the plaintiff is competent and amply responsible for furnishing such supplies, and each and every item thereof; that it has tendered to said county board a good and sufficient bond for the faithful performance of its bid, in the sum of $1,000, with two good and sufficient sureties, residents of the state;" that "said county board at its first meeting in January" opened all the "bids so filed, being two in number," and "refused to award the contract for furnishing such supplies to either; but rejected both of said bids and refused to further advertise for bids, but have in violation of the statute employed one Ben. H. Hayden to furnish all such supplies as may be needed for the current year in the several county offices; and did then and there re-

quire the several officers of said county to procure such
supplies as were required for their several offices for the
current year from said Hayden," etc.

The defendants filed an answer to the petition, and the
relator has demurred to certain counts of the answer, but in
the view we take of the case neither the answer nor demur-
rer need be noticed.

The statute requiring the county board to award con-
tracts for supplies to the lowest bidder is as follows (Sec.
149, chap. 18, Comp. Stat.): " In all counties where the cost
of furnishing the officers with books, blanks, and stationery
shall exceed the sum of $200 per year, the supplies for such
purposes shall be let in separate contracts to the lowest com-
petent bidder, who shall give bond for the faithful perform-
ance of his contract with at least two good and sufficient
sureties, residents of the state. The bond required by this
section shall be approved by the county board and the
sureties therein shall justify in the same manner as sureties
on official bonds.

"Sec. 150. It shall be the duty of the county clerk on
or before the first day of December, annually, to prepare
separate estimates of the books, and blanks, and stationery
required for the use of the county officers during the com-
ing year, and which by law are not required to be furnished
by the state, and during the first week in December he
shall publish a brief advertisement in one newspaper pub-
lished in his county, stating the probable gross number of
each item of books, blanks, and stationery required by such
county during the year following the first day of January
next ensuing, and inviting bids therefor, which bids shall
be filed with said clerk on or before the said first day of
January.

" Sec. 151. The county board shall, at their first meet-
ing in January in each year, open said bids and award the
contract for the furnishing of all such books, blanks, and
stationery as may be required by county officers to the

lowest bidder competent under the provisions of this sub-division, and who complies with all its provisions; *Provided,* That the county board may reject any or all bids.

" Sec. 152.   The accounts for books, blanks, and stationery furnished under said contract shall be audited and paid as other accounts against the county, and no county board or other county officer shall procure any such books, blanks, and stationery from any person other than the contractor or his assignee during the existence of such contract, and no account therefor shall be paid by the county."

These are special provisions that regulate and control the letting of contracts for the supplies mentioned in the statutes.   It will be observed that the language of section 149 is, that " the supplies for such purposes *shall be let in separate contracts to the lowest competent bidder* who shall give bond for the faithful performance of his contract," etc.

Section 150 requires the county clerk annually to pre pare *separate* estimates of the books, blanks, and stationery required, and publish a brief advertisement in one of the newspapers of the county inviting bids.   This advertisement, from the nature of the case, should be sufficiently full and explicit to enable bidders to bid thereon intelligently.

In *State v. York County,* 13 Neb., 65, it is said: " These propositions should distinctly specify the kind and quality desired, and if possible the commissioners should provide samples as a basis on which to make the bids, so that all would be made on the same basis.   The object of the law is to invite competition and prevent favoritism and fraud. And this can best be accomplished by placing all bidders on an equality in making their bids."

The advertisement in this case is as follows: "Sealed proposals will be received until noon of the first day of January, A.D. 1886, for furnishing supplies of stationery for the several county offices for the year 1886, to-wit:

One sheriff's day book.

One eight quire deed record (plain).

Two eight quire deed records (printed).

Two eight quire mortgage records (plain).

Two eight quire mortgage records (printed).

Two eight quire inventory and appraisement books for county judge.

All records to be Weston's best ledger paper, endorsed with appropriate title and numbered.

3,000 blank county warrants.

2,000 probate blanks, consisting of appointments, inventories, etc.

500 blanks for sheriff.

5 reams of legal cap.

3,000 letter heads. ·

5,000 note heads.

3,000 envelopes.

2 doz. quarts of Arnold's ink.

5 gross Spencerian pens No. 1.

5 gross Spencerian pens No. 2.

5 gross Faber pencils No. 2.

All to be of best quality. For records, bidders will bid for each book separately. All other articles by gross, dozen, or piece, as the case may be, for what is needed, and contract to be entered into according to law."

This notice is quite indefinite, and as it is the duty of the defendants to re-advertise and let the contracts to the lowest bidder the defect should be remedied.

Section 151 requires the county board to award the contract to the lowest competent bidder—that is, the lowest bidder who is able to give adequate security. The board is also given authority to reject any and all bids. This is simply the reservation of a right to protect the interests of the county, as where there is a combination to prevent competition, or other cause, by reason of which the county would be defrauded. But in such case the board is not absolved

from the duty of letting the contract to the lowest bidder. It should at once re-advertise for bids, and may be compelled to do so.

In the argument of this case the attorneys for the defendants contended that the court would not control the *discretion* of the county board in the matter of letting contracts, and we were referred to *State v. Kendall*, 15 Neb., 262, to sustain that position. That case was decided entirely on the construction of the act approved Feb. 27th, 1883, for the erection of the new capitol, and although there are expressions in the opinion that the action of the state board would not be controlled by mandamus in the letting of contracts, yet the decision of the majority of the court is based entirely on the statute, and the case has no application to a county board, which must let contracts in the mode pointed out in the statute. *State v. Whedon*, 13 Neb., 57. And a tax payer or the lowest bidder in a proper case may compel a compliance with the statute. *People v. Commissioners*, 4 Neb., 161. *Follmer v. Nuckolls County*, 6 Neb., 204. *Merrick Co. v. Batty*, 10 Neb., 176. Where, however, all the bids are rejected and it is the duty of the county board to re-advertise and let contracts, a tax payer may compel the board to act in the premises; but the action of the board in rejecting all bids will not be controlled, at least where there is no fraud. The board will not, therefore, be compelled to. award the contract in this case, but leave will be given to the relator to amend the petition by showing that it is a tax payer of the county, and that the defendants neglect to take the necessary steps for the reletting of the contract.

JUDGMENT ACCORDINGLY.

THE other judges concur.