McElhinney v. City of Superior.

J. M. McElhinney, appellee, v. City of Superior et al., appellants.

[Filed September 15, 1891.]

1. **Cities**: Power to Incur Expenditure. The city council of a city of the second class cannot incur any expense or enter into any contract on behalf of the city unless an appropriation shall have been previously made concerning such expenditure, except in cases where the proposition has been sanctioned by a majority of the legal voters of the city.

2. ———: Contracts With Councilman Voidable. Where a city council of a city of the second class enters into a contract in which one of the members of the council is interested, such contract may be avoided by the city, and if the contract has not been performed, a taxpayer can maintain an action to restrain the enforcement thereof.

Appeal from the district court for Nuckolls county. Heard below before Morris, J.

*W. F. Buck*, and *J. M. Ragan*, for appellants, cited: *Hull v. Baird*, 35 N. W. Rep. [Ia.], 612, and cases; *State ex rel. Fuller, v. Martin*, 27 Neb., 441.

*Tibbets, Morey & Ferris, contra*, cited: As to the power to incur expenditure: 1 Dillon, Mun. Corp., sec. 292, and cases; *Cook Co. v. McCrea*, 93 Ill., 236; *Ottawa v. Carey*, 108 U. S., 110; *Kelly v. Milan*, 21 Fed. Rep. [Tenn.], 842; *Ravenna v. Pa. Co.*, 45 O. St., 118; *Belle v. Platteville*, 71 Wis., 139; *Richmond v. McGirr*, 78 Ind., 192; *Henke v. McCord*, 55 Ia., 378; *Williams v. Davidson*, 43 Tex., 33; *McCann v. Otoe Co.*, 9 Neb., 324; *Stewart v. Otoe Co.*, 2 Id., 183; *R. Co. v. Washington Co.*, 3 Id., 30; *Somerville v. Dickerman*, 127 Mass., 272; *Francis v. Troy*, 74 N. Y., 338; *Fulton v. Lincoln*, 9 Neb., 358; *Hurford v. Omaha*, 4 Id., 350; *Blair v. Lantry*, 21 Id., 247; Boone, Corp., secs. 288, 295; *Latham v. Richards*, 12

Hun [N. Y.], 360. Councilman interested in contracts: *Grand Island Gas Co. v. West,* 28 Neb., 852; Boone, Corp., sec. 310; *Judevine v. Harwick,* 49 Vt., 180; *San Diego v. R. Co.,* 44 Cal., 106; *Manley v. Atchison,* 9 Kan., 358; *Oconto Co. Sup. v. Hall,* 47 Wis., 208; *Pickett v. Sch. Dist.,* 25 Id., 551; *Coles v. Williamsburgh,* 10 Wend. [N. Y.], 659; *Case v. Johnson,* 91 Ind., 477; *Gardner v. Ogden,* 22 N. Y., 332.

NORVAL, J.

In November, 1889, the council of the city of Superior passed an ordinance known as "Ordinance No. 120," by which the city gave to Robert Guthrie permission and authority to construct and operate an electric light plant and power in the city of Superior, and for that purpose authorized him to use the streets, avenues, alleys, and public grounds of the city for erecting poles, wires, and other appliances. This franchise was to continue for the period of thirty years.

Subsequently, and on the 24th day of November, 1889, the city council passed an ordinance known as "Ordinance No. 121," by which the city contracted with the said Robert Guthrie to pay him $924 per year, for the period of three years, for eleven electric arc lights to be furnished, maintained, and operated by him at such points in the city as the council should designate.

This suit was brought by the appellee McElhinney, a resident and taxpayer of the city, against the city council and Robert Guthrie, to enjoin said Robert Guthrie from constructing said electric light plant, or doing any work under the franchise granted by said ordinance No. 120, and to enjoin him from furnishing for the use of the city any electric lights, and the city council from paying therefor. A temporary injunction was granted, which, on the final hearing in the district court, was made perpetual.

It is urged that the contract to furnish electric lights is void because no appropriation had been made for the expenditure proposed.

The testimony shows that on the 26th day of July, 1889, the annual appropriation ordinance for the city of Superior for the fiscal year 1889 was passed, which appropriated various sums for specified objects and purposes, but appropriated no money for lighting the city.

Section 86 of article 1, chapter 14, of the Compiled Statutes provides that "The city council and board of trustees in villages shall, within the first quarter of each fiscal year, pass an ordinance, to be termed the annual appropriation bill, in which such corporate authorities may appropriate such sum or sums of money as may be deemed necessary to defray all necessary expenses and liabilities of such corporation, not exceeding in the aggregate the amount of tax authorized to be levied during that year; and in such ordinance shall specify the objects and purposes for which such appropriations are made, and the amount appropriated for each object or purpose. No further appropriation shall be made at any other time within such fiscal year unless the proposition to make such appropriation has been first sanctioned by a majority of the legal voters of such city or village, either by a petition signed by them or at a general or special election duly called therefor, and all appropriations shall end with the fiscal year for which they were made."

Section 87 of said chapter provides that "Before such annual appropriation bill shall be passed the council or trustees shall prepare an estimate of the probable amount of money necessary for all purposes to be raised in said city or village during the fiscal year for which the appropriation is to be made, * * * itemizing and classifying the different objects and branches of expenditures, as near as may be, with a statement of the entire revenue of the city or village for the previous fiscal year, and shall

enter the same at large upon its minutes, and cause the same to be published four weeks in some newspaper published or of general circulation in the city or village."

Section 88 provides "that the mayor and council, or board of trustees, shall have no power to appropriate, issue, or draw any order or warrant on the treasury for money unless the same has been appropriated by ordinance or the claim, for the payment of which such order or warrant is issued, has been allowed according to the provisions of this chapter, and appropriations for the class or object out of which such claim is payable has been made as provided in section 86. Neither the city council, nor the board of trustees, nor any department or officer of the corporation shall add to the corporation expenditures in any one year anything over and above the amount provided for in the annual appropriation bill for that year, except as herein otherwise specifically provided; and no expenditure for any improvement, to be paid for out of the general fund of the corporation, shall exceed in any one year the amount provided for such an improvement in the annual appropriation bill," etc.

Section 89 provides "that no contract shall hereafter be made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or department of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided."

These sections were construed by this court in *City of Blair v. Lantry*, 21 Neb., 247. We quote from the opinion: "It will be seen that no contract can be made by the city council or any committee or member thereof, or any expense incurred by any of the officers or departments of the corporation, whether such expense shall have been or-

dered by the city council or not, unless an appropriation shall have been previously made concerning such expense, except in certain cases where a further expenditure is sanctioned by a majority vote of the legal voters of the city." This is the only reasonable construction that can be placed upon the language used by the legislature, and the decision will be followed.

*State, ex rel. Fuller, v. Martin,* 27 Neb., 441, cited by counsel for appellant, does not sustain their position. In that case it is held that the money which section 86 requires to be annually appropriated before it can be drawn from the treasury, is the money raised, or authorized to be raised, by taxes levied during the year, and that the provisions of the section do not apply to money borrowed by a city for a lawful special purpose, where the proposition to apply the same thereto has been approved by a majority of the legal voters of the city. In the case at bar the expenditure of money for lighting the city of Superior was not sanctioned by the legal voters of the city, and the case is not within the rule laid down in the case cited.

It appears from the testimony that the city council, on the 8th day of May, 1889, passed an ordinance levying a license tax on certain occupations and business carried on within the limits of the city of Superior, and that under and by virtue of said ordinance the sum of $3,665.20 has been collected, of which sum $1,247.79 remained unexpended in the city treasury. Counsel for appellants insist that this money being in the treasury, the city could lawfully enter into a contract involving the expenditure of the same, although no provision had been made in the annual appropriation ordinance for the expenditure.

The third section of the occupation tax ordinance provides that the money collected under its provisions shall "only be used for paying the expenses of grading and repairing streets, constructing and repairing sidewalks, the lighting of the city, and sprinkling streets, and the paying

of police." While the ordinance specifies the objects for which the money raised thereunder might be used, it does not appropriate, nor attempt to appropriate, any specified sum to meet the expenses of lighting the city, nor, indeed, could the council lawfully appropriate the same by such an ordinance.

The annual appropriation bill alone, or the sanction of a majority of the legal voters of the city, could provide for the expenditure of the money collected under the occupation tax ordinance. That the money was in the treasury of the city could make no difference. It cannot be disbursed unless the same has been appropriated as provided by section 86.

No appropriation having been previously made to meet the expenses of lighting the city of Superior, the action of the city council in contracting with Robert Guthrie to furnish lights for the city was unauthorized and void.

The appellee contends that the granting of the franchise to Robert Guthrie, and the making of the contract with him to supply the city with light are illegal and void, because David Guthrie, one of the members of the city council of Superior, was at the time directly interested in the making of said contract and the granting of said franchise.

The testimony discloses that the defendant David Guthrie and Robert Guthrie are brothers and own a flouring mill in the city of Superior, which is operated by water power, and that it was intended to use said water power to generate the electricity for lighting.

There is in the record testimony tending to show that while the franchise was granted and the contract was made in the name of Robert Guthrie, yet David Guthrie was interested therein and that he would be pecuniarily benefited thereby. This is disputed by the testimony introduced by the appellants, but the trial court having found on all the issues of fact for the plaintiff and appellee, all disputed questions of fact must be regarded as settled in his favor.

Section 68 of the act governing cities of the class of Superior provides that "No officer of any city or village shall be interested, directly or indirectly, in any contract to which the corporation, or any one for its benefit, is a party; and any such interest in any such contract shall avoid the obligation thereof on the part of such corporation," etc. This provision is the same as section 46 of the act governing cities of the second class having over 5,000 inhabitants, which was before the court in *Grand Island Gas Co. v. West*, 28 Neb., 852. In that case a corporation contracted with the city of Grand Island to light its streets with electricity at a stipulated price per month for a definite period. When the contract was made one Charles Wasmer was a member of the city council and also a stockholder and officer of the corporation contracted with. An action was brought by a taxpayer to restrain the enforcement of the contract. It was held that the contract was illegal, and that a taxpayer could maintain an action to cancel the same. The case at bar falls within the reason and authority of that decision, and is controlled thereby.

The judgment of the district court is

AFFIRMED.

THE other judges concur.