JOSEPH GUTSCHOW, APPELLANT, v. WASHINGTON COUNTY
            ET AL., APPELLEES.

            FILED SEPTEMBER 20, 1905.    No. 13,974.

1. **Contract: PERFORMANCE.** A contract which has never been begun is
   a contract "not completed within the time specified," under the
   provisions of section 20, article I, chapter 89, Compiled Statutes,
   1903.

2. **Letting Contract.** The fact that the person to whom a contract is
   let under the provision of said section 20, requiring the contract
   to be let to the "lowest responsible bidder," is the only bidder,
   does not render the contract illegal, in the absence of fraud or
   collusion, or of any showing that the price is excessive or unrea-
   sonable.

3. **Notice: BID.** A bid which proposes "to construct, excavate and com-
   plete by working sections" at a fixed price per cubic yard of earth
   responds to a notice that required bids to be made "by each work-
   ing section," since the proposal means at the same price per yard
   for each working section or for the whole work.

APPEAL from the district court for Washington county:
LEE S. ESTELLE, JUDGE. *Affirmed.*

*E. C. Jackson,* for appellant.

*Frank Dolezal, Walton & Mummert* and *E. B. Carrigan,*
contra.

LETTON, C.

This was an action brought by a taxpayer of the
county of Washington, who was the owner of lands ad-

joining and affected by a proposed ditch improvement in said county, to enjoin the board of supervisors from letting a contract for the construction of the ditch. It appears that, after the preliminary proceedings required by the statute were had, the county board advertised for bids for the construction of the improvement, and in February, 1904, the contract therefor was awarded to Callahan Bros. & Katz, a firm of contractors. They filed the required bond, which was approved, and a contract was duly entered into between them and the county board for the construction of said ditch. The contract provided that the ditch was to be completed by the 15th of June, 1904. On June 1, 1904, on the application of the contractors, the time for completing the ditch was extended to January 1, 1905, under certain conditions. In July, 1904, the contractors declined to further proceed with the work on account of alleged irregularities in some of the proceedings of the board, and at a meeting on July 13 the board found that the contract had not been completed, nor had the work thereunder been commenced, and the contract was declared forfeited. The board then proceeded to advertise for bids for the construction of the ditch. At the time specified for the reception of bids the board met and, the bid of R. A. Brown & Company being the only one submitted, they awarded the contract for the construction of the ditch to that firm, whereupon this action was begun to enjoin them from entering into this contract. In the district court a demurrer to the petition was sustained, and judgment rendered dismissing the action, from which judgment plaintiff appeals to this court.

His first argument is that the only power given to the board to relet a contract for the construction of the ditch is given by section 20, article I, chapter 89, Compiled Statutes 1903 (Ann. St. 5519), which provides that "any contract not completed within the time specified, shall be reestimated and relet to the lowest responsible bidder, but not for a sum greater than the estimate, nor a second time to the same party"; that a contract which

has never been begun is not a contract "not completed," and that the words "not completed" imply something commenced and left unfinished. We are unable to discern the force of this argument. A contract, the work upon which has never been commenced, is certainly no nearer completion than one upon which part of the work has been performed. To adopt the construction contended for by the appellant would be to create the anomalous situation that, where a few shovelfuls of dirt had been thrown out in beginning the work of constructing a ditch, the board might relet the contract, but that, where nothing has been done at all, it was absolutely deprived of all power, and had reached an *impasse.* We will not lightly impute to the legislature such an intention, and we think the argument is without merit. If such were the law, the only means necessary to take to render abortive the whole proceedings would be to act as the first contractors did here—take the contract and fail to carry out its provisions.

The next point urged is that, since there was only one bidder, the contract was not let to the "lowest responsible bidder." *State v. Board of County Commissioners,* 13 Neb. 57, was a mandamus proceeding brought to compel the board of county commissioners of York county to enter into a contract with the relator for the purchase of certain stationery, on the ground that he was the lowest competent bidder therefor. It appears that two bids were filed with the board, but one of the bids was filed out of time and was not in accordance with the advertisement. This left the relator the only bidder. The court held that he was the lowest competent bidder and the writ was awarded as prayed. See, also, *Baum v. Sweeny,* 5 Wash. 712, 32 Pac. 778. It may often happen from the character of the work to be performed, or of the supplies to be furnished, that in a given locality one person alone may have the facilities and appliances necessary to fulfill the terms of the contract. It is a matter of common knowledge that extensive excavations, such as canals, ditches, or railway cuts, may be carried on much more cheaply and expedi-

tiously by the use of power machinery. A bidder equipped with such appliances may have so great an advantage over the ordinary individual as to make it useless to attempt to compete with him. Indeed, the bid of R. A. Brown & Company in the instant case recites that they had "a suitable dredge machine, now idle and ready for immediate use." There is nothing alleged against the good faith of the bidder, nor is it averred that the price is excessive or the bidder not responsible. Apparently, neither the county board nor the bidder are to blame in any way for the failure of other persons to file bids. Some courts have held that, where there was only one bidder, he could not be said to be the lowest bidder, since he was also the highest bidder; but in the absence of fraud or collusion, or of any showing that the price is excessive or unreasonable, we see no reason for assuming this position.

The third objection made is that the contract exceeds the estimated cost of construction, and that the bid did not comply with the terms of the notice which called for bids for the construction of the ditch by working sections. The reestimate made under the direction of the board showed no change from the former estimate. The estimate makes the total cost $42,705.84, the number of yards of earth to be excavated 388,344 cubic yards, and Brown's bid at 9¼ cents a cubic yard makes the total $35,912.57, which is within the estimate. The petition alleges that the amount of $42,690.24 was adopted by the board of supervisors as the estimate of the cost of said improvement, after having ascertained all the expenses, compensation for land taken and damages; that the main item of cost in the estimate was for the excavation of the ditch, which under the bid of Callahan Bros. & Katz amounted to $32,536.78, while Brown's bid aggregated $35,912.57, whereby the estimate would be exceeded by $3,375.79, which the board of supervisors had no authority to do. The petition, however, does not separate the items of the estimate so as to show what was originally estimated as the cost of excavation and construction. Brown's bid

falls within the original estimate, and hence is not subject to the objection made by appellant.

As to the contention that the bid did not respond to the advertisement, because it was not made by each working section, this is a mistake, since the bidder proposed to "construct, excavate and complete by working sections" at and for the price of $9\frac{1}{4}$ cents a cubic yard of earth. This means at $9\frac{1}{4}$ cents for each working section, or the same rate per yard for all.

We think the judgment of the district court is correct, and recommend that it be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reason stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.